IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | |
|---|---|
| CLARA WALKER, | * |
| Plaintiff, | * |
| v. | * Case No.: 8:18-cv-02466-PWG |
| BANK OF AMERICA CORP. et al., | * |
| Defendants. | * |

## MEMORANDUM OPINION AND ORDER

Plaintiff Clara Walker accuses Bank of America, N.A. of unlawfully discriminating against her on the basis of her race, sex, and age when it denied her application to refinance her home loan. Her lawsuit asserts a series of claims under the Equal Credit Opportunity Act ("ECOA") and the Fair Housing Act ("FHA"). A final claim accuses the bank of unfair, abusive, or deceptive trade practices under the Maryland Consumer Protection Act ("MCPA"). Upon review, I conclude that Ms. Walker's claims are adequately pleaded. The motion to dismiss is therefore denied.

### FACTUAL BACKGROUND[1]

The Amended Complaint identifies Ms. Walker as a 69-year-old African American woman. *See* Am. Compl. ¶ 7, ECF No. 14. She works full-time for United Airlines and has several other sources of income. *See id.* ¶¶ 12-14. In particular, she asserts, she receives a monthly

---

[1] All facts are taken from the Amended Complaint, ECF No. 14, and are assumed to be true for purposes of ruling on the motion to dismiss, *see Aziz v. Alcolac*, 658 F.3d 388, 390 (4th Cir. 2011).

1

pension through the Pension Benefit Guaranty Corp., earns additional income from an annuity valued at $340,000, and takes in an extra $570 per month from investment properties. *See id.* ¶ 14.

On March 19, 2018, Ms. Walker entered a Bank of America retail location in Waldorf, Maryland, with the aim of refinancing her primary residence in Brandywine, Maryland. *See id.* ¶ 8. The Amended Complaint alleges that the interest rate for a home refinance loan as of March 23, 2018 – a few days after her visit to the bank – was 4.625 percent. *See id.* ¶ 10.

A loan officer named Liz O'Malley helped her complete the application. *See id.* ¶ 9. Ms. Walker's prospects looked good. According to the Amended Complaint, Ms. O'Malley told her that her "documents are in order" and at one point commented, "You have a lot of money." *Id.* ¶ 16.

Ms. Walker, though, found the process frustrating. Although her consumer credit reports showed scores of 780 and 730,[2] Ms. O'Malley chose the lower of these two scores to list on the application. *See id.* ¶¶ 11, 18. Elsewhere on the application, Ms. O'Malley indicated that Ms. Walker had credit card debt, even though Ms. Walker told her that was not the case. *See id.* ¶ 19. Later, Ms. Walker alleges, Ms. O'Malley "unilaterally cancelled" a planned appraisal of the Brandywine property. *See id.* ¶ 22. Ms. Walker asked her to reschedule the appraisal, but she never did. *See id.* ¶ 23.

The Amended Complaint further alleges that, in the course of their dealings, Ms. O'Malley "probed into all aspects of [her] financial history, even those aspects that were irrelevant to the application process." *Id.* ¶ 20. She repeatedly questioned Ms. Walker about her properties and

---

[2] The Amended Complaint refers to the latter score as Ms. Walker's "middle reported score," suggesting one of her credit reports showed a score of less than 730. Am. Compl. ¶ 18. The pleading does not specify what the score might have been.

other income sources, no matter that Ms. Walker and various third parties already had provided documents "verifying each source and origin of income and assets." *Id.* ¶ 21.

On April 13, 2018, Ms. Walker received a letter from Bank of America listing a number of documents as "missing" from her application. *See id.* ¶ 24. The letter itself noted that the company's retail location ought to have provided most of those documents. *See id.* ¶ 26. Ms. Walker alleges that all of the purportedly missing documents were, in fact, in Ms. O'Malley's possession. *See id.* ¶ 28. She says she attempted to explain this to the Bank of America loan processor who had requested the documentation, but this processor did not respond to her messages. *See id.* ¶¶ 29-30.

On April 24, 2018, Ms. O'Malley informed Ms. Walker that "her loan had been cancelled." *Id.* ¶ 33. Neither Ms. O'Malley nor anyone else from the company explained the reason for the decision. *See id.* ¶ 34. By that time, the Amended Complaint states, "the interest rate for home refinance loans had risen" from 4.625 percent to 4.875 percent. *See id.* ¶¶ 10, 37. Ms. O'Malley told Ms. Walker "that if she was still interested in a home refinance loan, she would have to re-apply at the higher interest rate." *Id.* ¶ 38. Ms. Walker chose instead to apply for a home refinance loan through another lender. *See id.* ¶ 39. The lender, applying a rate of 4.875 percent, approved her application within 48 hours. *See id.*

Ms. Walker filed this federal lawsuit on August 13, 2018, at first naming Bank of America Corp. as the sole defendant and later amending her pleading to add Bank of America National Association as a co-defendant. *See* Compl., ECF No. 1; Am. Compl. 1. The Amended Complaint asserts six claims in all. Counts 1 through 3 seek to hold Defendants liable under the Equal Credit Opportunity Act ("ECOA") for discrimination on the basis of race, sex, and age, respectively. *See* Am. Compl. ¶¶ 47-61. Counts 4 and 5 raise similar claims of race- and sex-based discrimination,

respectively, under the Fair Housing Act ("FHA"). *See id.* ¶¶ 62-71. Count 6 accuses Defendants of unfair, abusive, or deceptive trade practices under the Maryland Consumer Protection Act ("MCPA"). *See id.* ¶¶ 72-78.

Defendants[3] seek a dismissal of all claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See* Mot. to Dismiss, ECF No. 15-1. Their motion is fully briefed. *See* ECF Nos. 15-16, 19, 21. No hearing is necessary. *See* Loc. R. 105.6.

## STANDARD OF REVIEW

A 12(b)(6) motion "tests the sufficiency" of the plaintiff's complaint. *Vance v. CHF Int'l*, 914 F. Supp. 2d 669, 677 (D. Md. 2012). Under Rule 8(a)(2), the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Beyond that, the Supreme Court has held that claims for relief must be "plausible," specifying that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011)). A court also may consider matters subject to judicial notice. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

---

[3] The motion to dismiss was filed in Bank of America, N.A.'s name only. *See* Mot. to Dismiss. The motion states that Bank of America Corp. is Bank of America, N.A.'s parent company and is not a proper defendant.

# DISCUSSION

Defendants challenge the sufficiency of the Amended Complaint, arguing it fails to state a claim for relief under any of the statutes Ms. Walker has invoked. I will start with the ECOA claims before turning to Ms. Walker's claims under the FHA and, finally, the MCPA.

*Counts 1-3: ECOA*

ECOA declares it unlawful "for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction . . . on the basis of race, color, religion, national origin, sex or marital status, or age." 15 U.S.C. § 1691(a)(1). Ms. Walker characterizes the denial of her loan application as discriminatory, accusing Defendants of singling her out for unequal treatment on the basis of her race, sex, and age. Defendants, in turn, argue she has not met the pleading requirements under Rule 8(a) because she has not adequately alleged that she was qualified for a home refinance loan or that Defendants, while denying her application, continued to extend loans to other applicants outside of the three protected classes she cites in her pleading.

a.

First, the basics. A plaintiff may prove an ECOA discrimination claim "by relying on any one of three different approaches used in the employment discrimination context: (1) direct evidence of discrimination; (2) disparate impact analysis; and (3) disparate treatment analysis." *Combs v. Bank of Am., N.A.*, No. GJH-14-3372, 2015 WL 5008754, at *3 (D. Md. Aug. 20, 2015). When, as appears to be the case here, the plaintiff seeks to prove disparate treatment without direct evidence of discrimination, the court analyzes the claim under the familiar *McDonnell Douglas* burden-shifting framework. *See Wise v. Vilsack*, 496 F. App'x 283, 285 (4th Cir. 2012) (per curiam). Under this framework, the plaintiff first must establish a prima facie case of race discrimination. *See Boardley v. Household Fin. Corp. III*, 39 F. Supp. 3d 689, 709 (D. Md. 2014).

If the plaintiff clears that bar, "the burden shifts to [the] defendants to show a legitimate nondiscriminatory reason for their actions." *Id.* (quoting *Letke v. Wells Fargo Home Mortg., Inc.*, No. RDB-12-3799, 2013 WL 6207836, at *3 (D. Md. Nov. 27, 2013)). "Ultimately, 'the burden returns to [the] plaintiff to demonstrate that the reason was a pretext.'" *Id.* (quoting *Letke*, 2013 WL 6207836, at *3).

*McDonnell Douglas*, importantly, establishes "the order and allocation of proof" in adjudicating a discrimination claim. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800 (1973); *see Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 (2002). This case, however, remains at the pleading stage, and at this point the plaintiff is under no obligation to *prove* anything. Her obligation, presently, is to state a claim that satisfies the demands of Rule 8(a)(2) of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 8(a)(2) (requiring a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief"); *McCleary-Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 585 (4th Cir. 2015). In this particular context, that means Ms. Walker's ECOA claims are not vulnerable to dismissal under Rule 12(b)(6) so long as her Amended Complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *McCleary-Evans*, 780 F.3d at 585 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotation marks omitted).

To that end, district courts in this circuit generally have looked to whether the plaintiff's complaint makes out a prima facie case of discrimination. *See, e.g., Brault v. Trans Union, LLC*, No. GJH-18-3244, 2019 WL 2162284, at *3 (D. Md. May 17, 2019); *Thomas v. Nationstar Mortg., LLC*, No. 17-120, 2018 WL 991541, at *3 (N.D.W.V. Feb. 20, 2018); *Peek v. SunTrust Mortg., Inc.*, No. 16-1415(LMB/IDD), 2017 WL 3258729, at *3 (E.D. Va. Feb. 15, 2017), *aff'd*, 693 F. App'x 231 (2017) (per curiam); *Glenn v. Wells Fargo Bank, N.A.*, No. PX 15-3058, 2017 WL

371956, at *12 (D. Md. Jan. 26, 2017); *Combs*, 2015 WL 5008754, at *3. Notably, though, the courts have not always been consistent in identifying the elements an ECOA plaintiff must plead.

In *Boardley v. Household Finance Corp. III*, I took note of an unpublished Fourth Circuit case, *Wise v. Vilsack*, discussing the elements an ECOA plaintiff must establish under the first step of the *McDonnell Douglas* framework. 39 F. Supp. 3d at 710 (citing *Wise*, 496 F. App'x 283, 285 (4th Cir. 2012) (per curiam)). Under *Wise*, I observed, a prime facie case of discrimination under ECOA has four elements: (1) the plaintiff is a member of a protected class, (2) the plaintiff applied for and was qualified for an extension of credit, (3) the defendant rejected the plaintiff's application for credit despite his or her qualifications, and (4) the defendant continued to extend credit to others of similar credit stature outside of the plaintiff's protected class. *Id.* (citing *Wise*, 496 F. App'x at 285). I noted, though, that this formulation was at odds with the approach this Court had long taken in ECOA cases. *See id.* at 710-11. Under that approach, the Court required the plaintiff to make the requisite showing on the first three elements only, making it unnecessary for the plaintiff to establish that the defendant continued to extend credit to similarly situated individuals outside of the protected class. *See id.* (citing *Letke*, 2013 WL 6207836, at *4).

I concluded in *Boardley* that the approach long followed by judges in this and other circuits remained appropriate in spite of *Wise*. *See id.* at 711. In support of this decision, I explained that creditors' lending processes "involve[] discrete and varying circumstances inherent in individual loan applications and approvals." *Id.* (quoting *Best Med. Int'l, Inc. v. Wells Fargo Bank, N.A.*, 937 F. Supp. 2d 685, 697 (E.D. Va. 2013)). "[R]equiring evidence of similarly situated individuals in the lending context [at the initial pleadings stage of a case] would be overly burdensome due to the volume of documents, confidentiality concerns, and the difficulty in identifying which applicants are similarly situated." *Id.* (quoting *Best Med. Int'l*, 937 F. Supp. 2d at 697) (internal

7

quotation marks omitted). Accordingly, I confined my analysis of the plaintiffs' ECOA discrimination claim to three elements only – namely, whether they belonged to a protected class, whether they applied for credit for which they were qualified, and whether they were rejected despite their qualifications. *See id.*

Other judges of this Court have cited *Boardley* favorably on a number of occasions in the intervening years, continuing to hold that a plaintiff's burden at the pleading stage does not extend beyond those three elements. *See Brault*, 2019 WL 2162284, at *3; *Glenn*, 2017 WL 371956, at *12. This approach, however, has not been embraced in all cases. In *Flippings v. U.S. Home Mortgage*, Judge Chuang required the plaintiff to plead all four of the elements the Fourth Circuit had listed in *Wise*. No. TDC-15-4021, 2017 WL 728179, at *2 (D. Md. Feb. 23, 2017). Notably, though, he took pains to explain that the fourth element was not onerous. He reasoned: "In a fair lending case, where information on whether applicants who are not members of protected classes are treated more favorably is 'information particularly within the lender's knowledge and control,' a complaint may allege the fourth element, discriminatory treatment of applicants with similar qualifications, based on information and belief."[4] *Id.* (quoting *Boykin v. KeyCorp.*, 521 F.3d 202, 215 (2d Cir. 2008)).

---

[4] Rule 11(b)(3) of the Federal Rules of Civil Procedure "allows pleadings based on evidence reasonably anticipated after further investigation or discovery." *Rotella v. Wood*, 528 U.S. 549, 560 (2000). To be clear, though, plaintiffs may not freely suffuse their pleadings with unsupported allegations simply by qualifying those allegations as having been made "upon information and belief." Under Rule 11(b)(3), the filing of a complaint certifies that its "factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3). As the advisory committee notes accompanying the 1993 amendments to the rule explain:

> Tolerance of factual contentions in initial pleadings by plaintiffs or defendants when specifically identified as made on information and belief does not relieve litigants from the obligation to conduct an appropriate investigation into the facts that is reasonable under the

8

I continue to be persuaded by the rationale and holding of *Boardley*. Accordingly, my assessment of Ms. Walker's ECOA claim will turn on whether she has adequately pleaded the requisite three elements of a prime facie case of discrimination under the statute.

b.

To sum up, a plaintiff asserting a discrimination claim under ECOA "must allege (1) that she belongs to a class protected by the statute, (2) that she applied for credit for which she was qualified, and (3) that she was rejected despite her qualifications." *Brault*, 2019 WL 2162284, at *3.

Here, Defendants concede that Ms. Walker, as a 69-year-old African American woman, is a member of a protected class for purposes of all three of her ECOA claims. *See* Reply 2, ECF No. 21. They argue, though, that she has not adequately pleaded the second element of a prima facie case. Specifically, they say, Ms. Walker "has not alleged the qualifications necessary to receive a refinanced loan at her desired rate" and, moreover, has not alleged that she met those requirements. *Id.*

Defendants cite *Combs v. Bank of America, N.A.*, No. GJH-14-3372, 2015 WL 5008754 (D. Md. Aug. 20, 2015), noting that, there, the Court dismissed a loan modification applicant's ECOA claim because she "did not indicate what qualifications were at issue." Mot. to Dismiss 4. But the pleading in *Combs* bore hardly any resemblance to Ms. Walker's complaint. In *Combs*, the Court noted that the applicant's complaint offered "very little in the way of background information." 2015 WL 5008754, at *1. What was known, based on various documents attached

---

> circumstances. . . . Moreover, if evidentiary support is not obtained after a reasonable opportunity for further investigation or discovery, the party has a duty under the rule not to persist with that contention.

Fed. R. Civ. P. 11(b) advisory committee's note to 1993 amendment.

to the complaint, was that the applicant's original home loan had been in default; that, shortly after refinancing, she and her husband were granted a divorce; that her husband subsequently failed to pay the mortgage, taxes, insurance, and utilities on the property; and that she soon afterward filed a petition for bankruptcy. *See id.* The Court ultimately dismissed her ECOA claim on several grounds, including the ground that she had "fail[ed] to adequately allege that she met the qualifications for loan modification." *Id.* at *3.

Ms. Walker's Amended Complaint tells a rather different story. Nowhere does it allege that she had fallen behind on her existing loan obligations or otherwise was in financial distress. On the contrary, it attests that she had strong credit scores (730 and 780), a full-time job with a major American airline, and several other sources of regular income, including $570 per month in rental income from her investment properties. *See* Am. Compl. ¶¶ 9-14, 18. Beyond this, the Amended Complaint alleges that Ms. O'Malley, while preparing the application, told Ms. Walker her documents were "in order" and commented, "You have a lot of money." *Id.* ¶ 16.

To be sure, Ms. Walker might well have strengthened her pleading by particularizing Bank of America's requirements for extending credit to an applicant in her circumstances. *See Glenn v. Wells Fargo Bank, N.A.*, No. DKC 15-3058, 2016 WL 3570274, at *5 (D. Md. July 1, 2016) (noting, in a decision dismissing an ECOA claim for discriminatory lending, that the plaintiff "offer[ed] no allegations regarding the terms of his credit approval, the requirements necessary for approval, or critically, Plaintiff's actual qualifications when he submitted each application"). I question, though, whether it would be practicable to *require* an ECOA plaintiff to detail the formula a lender will apply in determining whether to issue a loan to a particular applicant, given the likelihood that these details will be unknown to the applicant. Defendants, in any event, have

not cited any authority stating that this information is, in fact, required. I am satisfied that Ms. Walker's allegations here are sufficient to satisfy the second element of the prima facie case.[5]

c.

Defendants next argue that Ms. Walker failed to allege that Bank of America "actually rejected her loan application." Reply 3. Not so. The Amended Complaint expressly alleges that Ms. Walker "contacted Ms. O'Malley to inquire about the status of her home refinance loan," and that Ms. O'Malley, in response, "informed [her] that her loan had been cancelled." Am. Compl. ¶¶ 32-33. It then alleges that Ms. O'Malley suggested Ms. Walker could submit a new application. *See id.* ¶ 38. And finally, as Defendants note, it alleges that Ms. Walker "missed the opportunity to receive financing at an interest rate of 4.625 percent." *Id.* ¶ 50; *see* Reply 3. These allegations leave no doubt that Ms. Walker means to accuse Bank of America of unjustifiably rejecting her application, and I fail to see what more Defendants think a properly pleaded Complaint would allege. I conclude, therefore, that the allegations are sufficient to plead the third element of the prima facie case. And because I conclude that, under *Boardley*, a plaintiff need only plead the first three of the four elements the Fourth Circuit articulated in Wise, the motion to dismiss will be denied as to Counts 1 through 3 of the Amended Complaint.[6] *See Boardley*, 39 F. Supp. 3d at 711.

---

[5] Defendants argue in a footnote that the Amended Complaint fails to allege that Ms. Walker's application was complete. *See* Mot. to Dismiss 4 n.2. This argument is unfounded. The Amended Complaint plainly states that Ms. Walker disputed the bank's assertion that certain documents were missing and in fact told one of the company's loan processors that Ms. O'Malley was "already in possession" of all required documents. Am. Compl. ¶¶ 28-29.

[6] But, had I concluded that Ms. Walker was required to allege that Bank of America continued to extend credit to similarly situated individuals outside of the protected class, I would have allowed her to amend her complaint to plead this on the basis that she reasonably anticipated that further investigation or discovery would enable her to plead this element with evidentiary support. *See* Fed. R. Civ. P. 11(b)(3). And, if Ms. Walker desires to amend her complaint notwithstanding my adherence to *Boardley*, I will permit her to do so to address the fourth element that some courts have required for ECOA and FHA claims.

*Counts 4-5: FHA*

Similarly, I am satisfied that Ms. Walker's FHA claims are sufficiently well pleaded to overcome Defendants' motion to dismiss, for all the same reasons her ECOA claims overcome the motion.

The FHA prohibits businesses engaging in real estate-related transactions "to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of race, color, religion, sex, handicap, familial status, or national origin." 42 U.S.C. § 3605(a). To state a discrimination claim under the FHA, a plaintiff "must allege that [he or she was] discriminated against within the meaning of the FHA by showing: 1) discriminatory intent; or 2) discriminatory impact.'" *Boardley*, 39 F. Supp. 3d at 711 (quoting *Letke*, 2013 WL 6207836, at *3). Ms. Walker's claims evidently are of the discriminatory-intent variety. *See Letke v. Wells Fargo Home Mortg., Inc.*, 2015 WL 1438196, at *8 (D. Md. Mar. 27, 2015) (explaining that a discriminatory-impact claim under the FHA requires a showing "that a specific policy caused a significant disparate effect on a protected group").

In this circuit, district courts have required plaintiffs asserting an FHA lending-discrimination claim based on discriminatory intent to plead a prima facie case of discrimination, the elements of which are identical to the elements of a prima facie discrimination claim under ECOA.[7] *See Flippings*, 2017 WL 728179, at *2 (outlining identical pleading requirements for

---

[7] Defendants argue something more is needed, asserting that Ms. Walker's FHA claims fail because she "does not allege facts indicating a discriminatory animus was a factor in [the bank's] decision." Mot. to Dismiss 5. However, the cases they cite for this proposition are not on point. One of those cases, *Antonio v. Security Services of America, LLC*, 701 F. Supp. 2d 749 (D. Md. 2010), addressed a plaintiff's burden of proof at the summary judgment stage. Defendants also cite to *Boardley*, a case I already have discussed at some length. But the FHA claim in *Boardley* was based on a discriminatory-impact theory, not a theory of discriminatory intent. *See* 39 F. Supp. 3d at 711-12.

12

plaintiff's ECOA and FHA claims). Accordingly, in *Flippings*, this Court stated that a discriminatory intent claim under the FHA requires the plaintiff to plead "that (1) he was a member of a protected class, (2) he applied for and was qualified for a loan . . . , ([3]) the loan . . . was rejected despite his qualifications, and (4) [the lender] continued to approve loan[s] . . . for applicants with similar qualifications." *Id.* (citing *Rowe v. United Planters Bank of Se. Mo.*, 289 F.3d 533, 535 (8th Cir. 2008)); *see also Glenn*, 2016 WL 3570274, at *6. This Court has not explicitly addressed whether it is sufficient to plead the first three elements, as the *Boardley* Court found it was in the context of ECOA discrimination claims. It seems to me, though, that the same principles ought to apply.

Having already explained that Ms. Walker has adequately pleaded discrimination under ECOA, I conclude that her FHA claims are no less viable. Defendants' motion to dismiss is denied as to these counts as well.

*Count 6: MCPA*

Ms. Walker's final claim is under the MCPA, which prohibits "unfair, abusive, or deceptive trade practice[s]" in transactions involving "consumer goods, consumer realty, or consumer services" or in the "extension of consumer credit." Md. Code Ann., Com. Law § 13-303(1)-(2), (4). Among the unfair, abusive, or deceptive practices the statute prohibits is the "[a]dvertisement or offer of consumer goods, consumer realty, or consumer services . . . without intent to sell, lease, or rent them as advertised or offered." *Id.* § 13-301(5). Ms. Walker accuses Defendants of violating this provision, asserting that they falsely presented their refinancing services "as being available to all qualified applicants." Am. Compl. ¶ 74.

Defendants challenge this count on two grounds. First, they argue the Amended Complaint fails to allege an actual injury. Second, they say it does not satisfy the heightened pleading

standard applicable to fraud claims (and claims that "sound in fraud") under Rule 9(b) of the Federal Rules of Civil Procedure.

The MCPA authorizes "any person [to] bring an action to recover for injury or loss sustained by him as the result of a practice prohibited by [the statute]." § 13-408(a). To bring an action under this provision, a consumer "must allege (1) an unfair or deceptive practice or misrepresentation that is (2) relied upon, and (3) causes them actual injury." *Stewart v. Bierman*, 859 F. Supp. 2d 754, 768 (D. Md. 2012), *aff'd sub nom. Lembach v. Bierman*, 528 F. App'x 297 (4th Cir. 2013). As to the third element, the injury "must be 'objectively identifiable. . . . In other words, the consumer must have suffered an identifiable loss, measured by the amount the consumer spent or lost as a result of his or her reliance' on the misrepresentation." *Ayres v. Ocwen Loan Servicing, LLC*, 129 F. Supp. 3d 249, 270 (D. Md. 2015) (quoting *Lloyd v. Gen. Motors Corp.*, 916 A.2d 257, 277 (Md. 2007)).

Defendants note that a "'conjectural or potential injury' will not do." Mot. to Dismiss 6 (quoting *Gardner v. GMAC, Inc.*, 796 F.3d 390, 398 (4th Cir. 2015)). This is true. For example, in *Gardner v. GMAC, Inc.*, an automobile financing company sent notices to borrowers that their cars, which had been repossessed, would be sold at public sales. 796 F.3d 390, 393 (4th Cir. 2015). The borrowers argued – correctly, as it turns out – that the notices mischaracterized the sales as public, when in fact they were private. *See id.* The Fourth Circuit nevertheless held that the borrowers had failed to state a claim under the MCPA because they had not alleged that the misstatement caused them any actual injury, given that the company had not collected any part of the alleged deficiency balance on the borrowers' loans since it sent the repossession notices. *See id.* at 398.

Ms. Walker's allegations are different. She alleges that she applied for a loan (for which she was qualified) at an interest rate of 4.625 percent. *See* Am. Compl. ¶¶ 10, 50. It took the bank five weeks to process the application. *See id.* ¶¶ 8, 32-33. By the time the bank notified her that the application had been denied, interest rates had increased, and she was forced to take out a loan with another lender at a higher rate of 4.875 percent. *See id.* ¶¶ 37, 40. Taking these allegations as true, this turn of events clearly cost Ms. Walker money (increased interest payments over the life of the loan), and there is nothing conjectural about that.

Moving on, the parties disagree as to whether Rule 9(b) applies to the MCPA claim. Rule 9(b) provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). To satisfy the rule, a plaintiff "must, at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *United States ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*, 707 F.3d 451, 455-56 (4th Cir. 2013); *see also Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 781 (4th Cir. 2013) (applying Rule 9(b) to an MCPA claim).

Defendants argue Rule 9(b) applies here because "a claim for unfair or deceptive practices under the MCPA sounds in fraud." Mot. to Dismiss 6 (citing *Haley v. Corcoran*, 659 F. Supp. 2d 714, 724 n.10 (D. Md. 2009)). This Court has, indeed, applied the heightened pleading standard to MCPA claims on a number of occasions. *See, e.g., Brault v. Trans Union*, 2019 WL 2162284, at *3-*4; *Glenn*, 2016 WL 3570274, at *8; *Ayres*, 129 F. Supp. 3d at 270; *Turner v. JPMorgan Chase, N.A.*, No. TDC-14-576, 2015 WL 5021390, at *4 (D. Md. Aug. 21, 2015); *Allen v. CitiMortg., Inc.*, No. CCB-10-2740, 2011 WL 3425665, at *9 (D. Md. Aug. 4, 2011); *Haley*, 659

F. Supp. 2d at 724 n.10. Ms. Walker, though, argues the MCPA encompasses a broad range of practices, not all of which could be said to "sound in fraud." *See* Am. Opp'n 6, ECF No. 19. Her claim, she says, does not, as she "is not claiming that Defendants engaged in fraudulent practices, only that their practices were unfair." *Id.*

A claim "sounds in fraud," and therefore implicates Rule 9(b), when it "is premised upon a course of fraudulent conduct." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). Here, Ms. Walker's allegation is that "Defendants advertised consumer goods without intent to sell, lease, or rent them as offered." Am. Opp'n 6. Put another way, she asserts that Defendants misrepresented the general availability of the loan products she sought. *See* Am. Compl. ¶ 74 (alleging that "the consumer goods, realty, and services *were advertised* as being available to all qualified applicants" (emphasis added)). This contention – that Defendants made a false representation – evokes the first element of the tort of fraud, as it is defined under Maryland law. *See Ellerin v. Fairfax Sav., F.S.B.*, 652 A.2d 1117, 1123 (Md. 1995). Accordingly, I have no difficulty concluding that Ms. Walker's claim sounds in fraud, and that the Rule 9(b) heightened pleading requirements apply to it. *See Olin v. Dakota Access, LLC*, 910 F.3d 1072, 1076 (8th Cir. 2018); *Glenn*, 2016 WL 3570274, at *8.

Defendants argue the Amended Complaint is deficient in that it fails to identify the time, place, and content of any particular false representations. It is true that Ms. Walker has not identified any false or misleading advertisements. I note, though, that the statutory provision she has invoked does not concern itself exclusively with commercial advertisements, such as those on television or radio or in print or online media. Rather, it states that an unfair, abusive, or deceptive trade practice may take the form of an "[a]dvertisement *or offer* of consumer goods, consumer realty, or consumer services." Md. Code Ann., Com. Law § 13-301(5) (emphasis added). To that

end, I observe that the Amended Complaint is particularized in discussing Ms. Walker's interaction with Ms. O'Malley, the loan processor, on the day she visited the bank to apply for a loan. It specifies the date of this interaction (March 19, 2018), the location where it took place (Bank of America's retail location at 3255 Crain Highway, Waldorf, Maryland), the identity of the person making the challenged representations (Ms. O'Malley), and the consequence of the plaintiff's purported reliance on the misrepresentations (the denial of her application, followed by her submission of a new application at a higher interest rate). *See* Am. Compl. ¶¶ 8-9, 33, 39-40. The Amended Complaint also quotes portions of their conversation, noting that Ms. O'Malley remarked, "You have a lot of money," and, "Oh, your documents are in order." *Id.* ¶ 16. And while it does not allege that Ms. O'Malley explicitly stated that the bank's home refinance loans were, indeed, "available to all qualified applicants," her willingness to meet with Ms. Walker and process her application certainly supports such an inference.

Whether Ms. Walker's claim will prove viable upon summary judgment remains to be seen. I do find, though, that she has adequately stated a claim upon which relief may be granted. As to this claim, too, Defendants' motion to dismiss is denied.

## **ORDER**

Accordingly, it is this day, by the United States District Court for the District of Maryland, hereby ORDERED that:

1. Defendant Bank of America, N.A.'s Motion to Dismiss (ECF No. 15) IS DENIED;

2. Plaintiff Clara Walker may, but is not required to, file a second amended complaint no later than August 23, 2019, for the limited purpose of expanding the fact section to include allegations to the effect that Defendants continued to extend credit to similarly situated applicants outside of the protected classes to which Ms. Walker belongs. Ms.

17

Walker may amend her pleading only to the extent that she may do so in accordance with Rule 11(b)(3), as discussed in the Memorandum Opinion; and

2. Defendants SHALL FILE an answer to the operative complaint no later than September 13, 2019.

Date: /s/ 8/8/19

Paul W. Grimm
United States District Judge